IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WHITE CAP CONSTRUCTION SUPPLY, INC., ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | |
| TIGHTON FASTENER AND SUPPLY ) CORPORATION d/b/a Tighton Tools & ) Fasteners, Inc.; MATT UPDIKE; MIKE ) NENEMAN; RICH WHITE; GREG ) ASCHE; JASON JARZYNKA; and BILL ) SHUMAKER, ) ) | 8:08CV264 ORDER |
| Defendants. ) | |

The following motions are now ripe for decision:

33  Motion to Stay and to Compel Arbitration, filed by defendants Updike, Neneman, White, Asche, Jarzynka and Shumaker (together, the Individual Defendants)

36  Motion to Stay Action Pending Arbitration, filed by Tighton Fastener and Supply Corp. (Tighton)

49  Stipulation of White Cap Construction Supply, Inc. (White Cap) and the Individual Defendants regarding arbitration

## BACKGROUND

In summary, the complaint alleges that White Cap and Tighton are business competitors. White Cap supplies specialty hardware, tools, and materials to professional construction contractors. Tighton supplies fasteners, power tools and ancillary consumables.    Tighton wished to expand its business outside the fastener realm into the non-fastener business, including the sale of construction materials and equipment such as rebar, work wear, concrete-related items, and repair or restoration products.

Between January 28, 2008 and March 3, 2008, the majority of White Cap's Nebraska sales force (including the Individual Defendants) left White Cap and went to work for Tighton. White Cap's sales force at its Store 101 was reduced from 11 salespersons to 3 salespersons within an 8-week period.

The Individual Defendants were account managers for White Cap and had access to White Cap's established customer base. They and three other sales employees were solicited and hired by Tighton. White Cap alleges that at least one of the Individual Defendants contacted White Cap's customers as a representative of Tighton and attempted to coordinate their non-fastener purchasing needs by using White Cap's preferred suppliers. White Cap further alleges that Tighton has used White Cap's confidential customer information to solicit business from White Cap's customers.

White Cap has stated the following claims for relief:

- Unfair Competition (against Tighton & Updike)
- Breach of Employment Contracts (against the Individual Defendants)
- Tortious Interference with White Cap's Employee Relationships (against all defendants)
- Tortious Interference with White Cap's Employee Agreements (against Tighton)
- Tortious Interference with White Cap's Customer Relationships or Expectations (against all defendants)
- Civil Conspiracy (against all defendants)
- Aiding and Abetting (against all defendants)

In its answer, Tighton denies White Cap's allegations and affirmatively alleges that it did not solicit or "raid" any of White Cap's employees; any information it received about White Cap's business or customers was not "confidential"; Tighton's activities do not violate the Nebraska Deceptive Trade Practices Act or any other applicable law; and the Individual Defendants' employment agreements with White Cap are unenforceable and, in the alternative, do not prohibit them from performing their jobs at Tighton.

## ISSUES PRESENTED

On January 19, 2009, White Cap and the Individual Defendants filed a stipulation (Doc. 49) stating that they agreed to the arbitration of all causes of action alleged by White Cap against the Individual Defendants, pursuant to the following conditions:

     1.    All claims asserted by Plaintiff against the Individual Defendants in the pending litigation shall be submitted in a single arbitration;

     2.    The arbitration will take place pursuant to the Individual Defendants' Employee Acknowledgment of Obligations ("Employment Agreements"), and shall be conducted in Douglas County, Nebraska in accordance with the terms of the Employment Agreements, the Federal Arbitration Act ("FAA"), and the Employment Arbitration rules and regulations of the American Arbitration Association ("AAA");

     3.    All discovery available under the Federal Rules of Civil Procedure, including, but not limited to, interrogatories, requests for production of documents, requests for admissions, and depositions, may be utilized by the Parties in preparing for the arbitration, and the parties will have a reasonable time to conduct discovery;

     4.    All discovery allowed of a third party under the Federal Rules of Evidence will be available to the Parties, including depositions and the production of documents. The Parties agree they may request the issuance of third-party subpoenas for such purposes by either the arbitrator(s), or, if necessary, by this Court upon petition by either the Plaintiff or the Individual Defendants, requesting that the Court temporarily lift the stay of this action against the Individual Defendants for the sole and limited purpose of issuing third party-subpoenas;

     5.    All discovery, whether taken from a Party or third party, shall be conducted in accordance with the Federal Rules of Civil Procedure, including all limitations established by such rules;

     6.    The Parties shall bear their own attorneys' fees related to the arbitration;

     7.    The arbitration shall be final and binding on the Parties, but shall not be final or binding on any other individual or entity who is not a party to the arbitration. The Parties agree that they are not in privity with any other individual or entity for purposes of Plaintiff's claims against the Individual Defendants;

     8.    Except as provided herein, the Court shall stay the proceedings in the above captioned action against only the Individual Defendants;

     9.    This Stipulation shall not affect Plaintiff's rights to separately proceed against Co-Defendant Tighton Tools in the pending litigation; and

     10.    To the extent the Court does not stay the litigation against Tighton Tools, or permits discovery against Tighton Tools to continue in this action, the Parties agree to conduct discovery in the arbitration in a manner that minimizes or reduces

duplication with discovery in the litigation. The Parties further agree that discovery taken in the pending litigation against Tighton Tools may be provided to the Individual Defendants upon request, and that it may be utilized by either Party in the arbitration.

Upon review of paragraphs 8, 9 and 10 of the Stipulation, the court directed Tighton to respond. In its response (Doc. 51), Tighton agrees that the stipulated request that the court grant the Individual Defendants' motion to stay and compel arbitration "is appropriate (and required under the terms of the arbitration agreements between those parties)." Tighton, however, objects to the other parties' "stipulation" that Tighton's motion to stay should be overruled. Tighton's position is that White Cap's claims against it should also be stayed until arbitration is completed because the claims against Tighton and the Individual Defendants are factually and legally interrelated, and the court should not allow this case to proceed piecemeal.

In reply (Doc. 48), White Cap points out that Tighton is not a party to the arbitration and will not be bound by any arbitration award. White Cap has asserted separate claims against Tighton, *i.e.*, unfair competition and tortious interference with the employee agreements, and the facts supporting those claims are distinct. White Cap argues that a stay of its claims against Tighton would cause unnecessary delay and would force White Cap to conduct consecutive, rather concurrent, discovery.

The issue to be decided is whether White Cap's claims against Tighton should be stayed until after White Cap completes arbitration with the Individual Defendants.

## LEGAL ANALYSIS

In general, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 166 (1936).

The Federal Arbitration Act, 9 U.S.C. § 3 ("FAA"), requires the court, upon application by a party to an arbitrable issue, to stay the trial of the action until arbitration has been had in accordance with the parties' arbitration agreement. The FAA is silent regarding non-arbitrable issues. *See, e.g., Narragansett Elec. Co. v. Constellation Energy Commodities Group, Inc.*, 563 F.

Supp. 2d 325, 330 (D.R.I. 2008) (citing *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987)).

If not all issues at suit are arbitrable, in determining whether to grant a discretionary stay, the court must consider issues such as the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays. *See AgGrow Oils, L.L.C. v. National Union Fire Ins. Co.*, 242 F.3d 777, 783 (8th Cir. 2001). "Traditionally, an applicant for a stay has the burden of showing specific hardship or inequity if he or she is required to go forward." *Jones v. Clinton*, 72 F.3d 1354, 1364 (8th Cir. 1996) (citing *Landis v. North American Co.*, 299 U.S. at 254-56).

In this instance, there may be issues of fact that are common to White Cap's claims against Tighton and those against the arbitrable claims asserted against the Individual Defendants; however, the two categories of claims are not interdependent to the extent that liability for one is conditional upon liability for the other. *See, e.g., Narragansett Elec. Co. v. Constellation Energy Commodities Group, Inc.*, 563 F. Supp. 2d at 332. The arbitration will not be binding on Tighton and will not resolve the issues of whether Tighton unfairly competed with White Cap or interfered with the Individual Defendants' employment agreements.

It is also apparent that White Cap will need to conduct discovery specifically directed toward Tighton's conduct immediately prior, during, and subsequent to its employment of the Individual Defendants. The court agrees that, given the separate claims and the need for a separate body of discovery, the court would not conserve any resources by staying White Cap's claims against Tighton pending the Individual Defendants' arbitration proceeding.

The court is also persuaded that Tighton would not be unfairly prejudiced if the claims against it are not stayed, as Tighton will have to expend the same time and money if it defends this action now as it would after arbitration concludes. It is likely that a stay would result in White Cap having to conduct duplicative discovery with Tighton after arbitration is completed. Finally, White Cap did not bargain for arbitration with Tighton and would be unfairly prejudiced if its claims against Tighton are stayed indefinitely until after the other parties' arbitration is concluded.

For these reasons,

**IT IS ORDERED:**

1. The Stipulation of White Cap Construction Supply, Inc. and the Individual Defendants regarding arbitration (Doc. 49) is approved, and the Individual Defendants' Motion to Stay and to Compel Arbitration (Doc. 33) is denied as moot.

2. Tighton's Motion to Stay Action Pending Arbitration (Doc. 36) is denied.

3. White Cap and Tighton may proceed with discovery and depositions in the pending action.

4. Counsel for White Cap and Tighton shall contact my chambers no later than **March 5, 2009**, to schedule a Rule 16 planning conference for the purpose of setting a discovery schedule and progressing this matter to trial.

5. White Cap shall file periodic status reports concerning the progress of the arbitration proceedings involving the Individual Defendants. The first status report shall be filed by **June 1, 2009.** Subsequent status reports are due quarterly thereafter.

**DATED February 25, 2009.**

BY THE COURT:

s/ F.A. Gossett
**United States Magistrate Judge**